UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| TERELLE D. HOBBS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAPE GIRARDEAU COUNTY JAIL, et al., )<br>)<br>Defendants. ) | No. 1:19-CV-43 ACL |

## MEMORANDUM AND ORDER

This matter is before the Court upon review of the amended complaint pursuant to 28 U.S.C. § 1915. Plaintiff is currently incarcerated at Ste. Genevieve Detention Center. Based on a review of the amended complaint, the Court finds that the amended complaint should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

## 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court may dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. An action is frivolous if "it lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action is malicious when it is undertaken for the purpose of harassing litigants and not for the purpose of vindicating a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), *aff'd* 826 F.2d 1059 (4th Cir. 1987).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of

a cause of action [that are] supported by mere conclusory statements." *Id.* at 1949. Second, the Court must determine whether the complaint states a plausible claim for relief. *Id.* at 1950-51. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." *Id.* The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred. *Id.* at 1950, 1951-52.

## The Amended Complaint

Plaintiff brings this action to redress violations of his civil rights pursuant to 42 U.S.C. § 1983, and names the Cape Girardeau County Jail as a defendant. Plaintiff also brings this action against Unknown Pullum, an Officer at the Jail. Plaintiff brings this action against defendants in their individual and official capacities.

Plaintiff alleges that on the night of February 20, 2019, he became sick at the Jail, and he began to get very short of breath. He states that he began "wheezing, losing sleep, and having trouble breathing." Plaintiff asserts that when he told Officer Pullum that he was not feeling well, Officer Pullum told him that he would have to wait to see a doctor until the morning. Plaintiff states that Officer Pullum knew that he suffered from a chronic lung issue, and that he also suffered from anxiety and panic issues relating to his breathing. He believes that Officer Pullum should have reacted differently when he requested medical assistance.

Plaintiff admits that prior to telling plaintiff that he would need to wait to see the doctor, Officer Pullum first checked plaintiff's vital signs. He found plaintiff's blood pressure to be mildly elevated, and plaintiff admitted that he was having a panic attack at the time in his cell,

believing he was unable to breathe. Plaintiff's blood pressure was 145/104, however his oxygen level was good at 91%. Plaintiff admits that Officer Pullum called the doctor at this time to discuss plaintiff's symptoms with him, and Officer Pullum came back to plaintiff's cell to tell him that the doctor wanted plaintiff to try to relax and laydown and see if he could wait until morning to seek medical attention.

Plaintiff claims that he waited about an hour, and felt worse, so at that time, he again sought emergency medical assistance. At this point, Officer Schwann answered plaintiff's call at his cell, and he checked his vitals and found that his oxygen level had dropped to around 85%. Officer Schwann brought plaintiff to the front holding cell in anticipation of bringing him to St. Francis hospital for treatment. Plaintiff acknowledges that he was transported to the hospital within the next fifteen (15) minute time period. However, he takes issue with the fact that he was transported in a Sheriff's vehicle, rather than an ambulance. Plaintiff also blames Officer Pullum for failing to have taken him to the hospital the prior hour.

Plaintiff states that at the hospital he was given a nebulizer, steroids, a breathing treatment, breathing assistance, as well as an IV, to assist in his breathing. He was kept overnight in the hospital and stayed two days in the Jail SICU when he returned and placed on a liquid diet.

As a supplement to his complaint, plaintiff has provided the Court with medical records from the Cape Girardeau County Jail, dated from November 30, 2018 to February 26, 2019.

On November 30, 2018, plaintiff requested a sick call at the Jail, asserting that his asthma was bothering him, and he claimed that he was coughing up mucus and phlegm, as well as wheezing. He was seen by the Nurse on the morning of December 1, 2018, and she noted that plaintiff's lungs were clear and his heartrate was normal. Plaintiff's blood pressure was normal, and his oxygen was 98%. Plaintiff's pulse was 79 beats per minute. Nonetheless, the nurse made

a plan to call the doctor regarding plaintiff's chief complaint that he was coughing up mucous. Plaintiff was told to increase his fluid intake and file further medical requests as needed.

On December 1, 2018, sometime in afternoon or evening, plaintiff requested a sick call at the Jail, asserting that his breathing was still bothering him, he was "wheezing," coughing up phlegm and mucous it hurt his chest when he coughed. He was seen by a nurse on December 4, 2018, and he was diagnosed with a mild upper respiratory infection, as well as asthma, and he was prescribed 500 milligrams of amoxicillin, an antibiotic, two times per day, as well as 20 milligrams of prednisone, once per day for 3 days.

On December 20, 2018, plaintiff requested a sick call at the Jail, asserting he was suffering from "wheezing, shortness of breath and chest pains." He was seen by Dr. Pewitt on that same date. Dr. Pewitt diagnosed plaintiff as having difficulty with his asthma and prescribed plaintiff 500 milligrams of Cipro, an antibiotic, to be taken twice per day for 10 days, as well as 20 milligrams of prednisone, a steroid, to be taken once per day for 10 days.

On January 2, 2019, plaintiff filed a medical request form. In the request plaintiff asserted that his chest was "tight" and he was still wheezing. He claimed he was still having trouble breathing and the breathing treatments he was taking three times per day weren't helping. Plaintiff stated, "Please get me proper medical treatment." On top of the medical request form, the Nurse for the Jail has written, "Prednisone 10 mg QD 10 x days." She has signed her name on behalf of Dr. Pewitt.

On January 4, 2019, plaintiff filed a medical request form. In the request plaintiff asserted that he was still wheezing and short of breath, especially at night, and that he was finding it difficult to sleep. Plaintiff wrote that he wasn't getting relief from the prednisone, and he was having to sleep sitting up at night. Plaintiff claimed he was "starting to have pains throughout the

day as well." On the top of the request form, Dr. Pewitt prescribed plaintiff 10 milligrams of Singular, an asthma medication.

On February 6, 2019, plaintiff filed another medical service request. In his request form, plaintiff asserted that he was suffering from chest pains, congestion and a runny nose. Plaintiff also asserted that he was wheezing. The nurse documented that plaintiff's oxygen levels were at 96%, and Dr. Pewitt again prescribed plaintiff with 500 milligrams of Cipro, twice per day, for 10 days. Plaintiff was also prescribed 20 milligrams of prednisone per day for 10 days.

On February 19, 2019, plaintiff filed a medical service request. On his request form, plaintiff complained of a dry cough, body aches, chest pains, as well as slight wheezing and loss of sleep. Plaintiff claims in his amended complaint that he had been told he was to see the doctor the following day.

On February 26, 2019, plaintiff was seen in medical at the Cape Girardeau County Jail after he was hospitalized for his self-declared asthma issues. His exam revealed that plaintiff was in good health, with 94% oxygen, good heart and lung sounds, and that he was reporting feeling better. It appears plaintiff had stayed in the hospital one day, as well as the Jail SICU for two days after returning from the hospital.

Plaintiff seeks compensatory damages in this action against the Jail and Officer Pullum.

**Discussion**

Plaintiff's claim against the Cape Girardeau County Jail is legally frivolous because it cannot be sued. *Ketchum v. City of West Memphis*, Ark., 974 F.2d 81, 82 (8th Cir. 1992) (departments or subdivisions of local government are "not juridical entities suable as such."). Thus, all claims against the Jail are subject to dismissal.

Plaintiff's claims against Officer Pullum in his official capacity are also subject to dismissal. Naming a government official in his or her official capacity is the equivalent of

naming the government entity that employs the official – in this case, Cape Girardeau County. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). To state a claim against a municipality or a government official in his or her official capacity, plaintiff must allege that a policy or custom of the government entity is responsible for the alleged constitutional violation. *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91 (1978). The instant complaint does not contain any allegations that a policy or custom of Cape Giardeau County was responsible for the alleged violations of plaintiff's constitutional rights. As a result, the complaint fails to state a claim upon which relief can be granted.

A local governing body such as Cape Giardeau County can be sued directly under § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). In order to prevail on this type of claim, the plaintiff must establish the municipality's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075. Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of Cape Giardeau County.

First, plaintiff can show that Cape Girardeau County had an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible…for establishing final

policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390.

Alternatively, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim against Cape Girardeau County by establishing a deliberately indifferent failure to train or supervise. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

A plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an

unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Here, there are no facts supporting the proposition that plaintiff's constitutional rights were violated due to an unconstitutional policy or custom. He also fails to present any facts indicating that Cape Girardeau County failed to train its employees. As such, plaintiff's official capacity claims against Officer Pullum must be dismissed. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

Plaintiff's individual capacity claims for deliberate indifference to his medical needs against Officer Pullum under the 14th Amendment are also subject to dismissal.[1]

To state a claim for medical mistreatment, plaintiff must plead facts sufficient to indicate a deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Camberos v. Branstad*, 73 F.3d 174, 175 (8th Cir. 1995). Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. *Estelle*, 429 U.S. at 106. In order to show deliberate indifference, plaintiff must allege that he suffered objectively serious medical needs and that defendants actually knew of but deliberately disregarded those needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. *Estelle*, 429 U.S. at 106. In order to show deliberate indifference, plaintiff must allege that he suffered objectively serious medical needs

---

[1] To state a claim for medical mistreatment, plaintiff must plead facts sufficient to indicate a deliberate indifference to serious medical needs. *Vaughn v. Greene County*, 438 F.3d 845, 850 (8th Cir. 2006) ("Although this court has yet to establish a clear standard [for medical mistreatment] for pretrial detainees, we repeatedly have applied the same 'deliberate indifference' standard as is applied to Eighth Amendment claims made by convicted inmates."); *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (applying the Eighth Amendment deliberate indifference analysis to a pretrial detainee's Fourteenth Amendment claim); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (Eighth Amendment); *Camberos v. Branstad*, 73 F.3d 174, 175 (8th Cir. 1995) (same).

and that defendants actually knew of but deliberately disregarded those needs. *Vaughn*, 438 F.3d at 850.

Plaintiff alleged that on the night of February 20, 2019, he became sick at the Jail, and he began to get very short of breath. He states that he began "wheezing, losing sleep, and having trouble breathing." Plaintiff asserts that when he told Officer Pullum that he was not feeling well, Officer Pullum told him that he would have to wait to see a doctor until the morning. Plaintiff states that Officer Pullum knew that he suffered from a chronic lung issue, and that he also suffered from anxiety and panic issues relating to his breathing. He believes that Officer Pullum should have reacted differently when he requested medical assistance.

Despite these allegations, plaintiff admits that prior to Officer Pullum telling him that he would have to wait to see the doctor, Officer Pullum first checked plaintiff's vital signs and after doing so, he called the doctor on plaintiff's behalf. Plaintiff's blood pressure was only somewhat elevated, at a rate of 145/104, and his oxygen level was good, at a level of 91%. It was only after consulting with the doctor on the telephone that Officer Pullum told plaintiff that the doctor said to see if he could relax and try to sleep and wait until morning to see the doctor. And plaintiff admits that he was also suffering from anxiety.

Given these facts the record does not show that Officer Pullum acted with deliberate indifference to plaintiff's request for medical assistance. Rather, when plaintiff asked for medical assistance, he took his complaint seriously, checked his vitals, called the doctor after doing so, and acted on the doctor's advice.

Moreover, when plaintiff sought medical assistance an hour later, telling Officer Schwann he felt worse, and Officer Schwann checked plaintiff's vital signs and found that his oxygen level had dropped to 85%, plaintiff was taken to the hospital at that time. The decision was made to take plaintiff to the hospital even though plaintiff acknowledges that the only staff

working were Officer Pullum, Officer Schwann and Officer Car. Thus, defendant Pullum did not attempt to stop plaintiff from receiving care at that time.

Last, plaintiff takes issue with the fact that he was taken to the hospital in a Sheriff's vehicle rather than an ambulance, but he does not indicate the significance of his complaint. In other words, he has failed to allege that the Sheriff's vehicle failed to get him to the hospital slower than waiting for, or calling an ambulance, would have. Additionally, he has failed to allege that Officer Pullum was the individual was insisted that plaintiff go to the hospital in the Sheriff's vehicle rather than an ambulance.

Given the aforementioned, the Court finds that plaintiff has failed to allege a claim for medical mistreatment against defendant Pullum. His claims against Officer Pullum in his individual capacity will be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's complaint is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [Doc. #12] is **DENIED AS MOOT.**

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 8th day of May, 2020.

                                                RONNIE L. WHITE
                                                UNITED STATES DISTRICT JUDGE